321 So.2d 759

**Raymond LANDRY**

v.

**STATE.**

**I Div. 595.**

Court of Criminal Appeals of Alabama.

Nov. 4, 1975.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

David L. Barnett, Mobile, for appellant.

HARRIS, Judge.

Appellant was indicted for murder in the first degree. He was convicted of murder in the second degree and his punishment was fixed at twenty years in the penitentiary. Prior to arraignment he was found to be indigent and the court appointed counsel to represent him. He is in this court with a free transcript and another attorney represents him on appeal.

It was shown without conflict that appellant and four other Negro men drove from New Orleans, Louisiana, to Mobile, Alabama, on August 4, 1974, to obtain narcotics. They met a local user, referred to by one of appellant's accomplices as

"Bruce" whose true name was Robert L. Brown. Brown put the five men from New Orleans in touch with a local pusher from whom they bought seven caps of heroin for $87.00. They went to an apartment occupied by one Freeman and his girl friend and "shot up" the heroin by injecting it in their arms. This was a low quality drug and the men got mad because they had been cheated. Brown then assisted the men in obtaining three caps of heroin from the deceased for which they paid him $47.00 and owed him $5.00 more. Appellant and his friends went back to the apartment and used the drugs. The deceased appeared at the apartment to collect the balance due him. He was shot with a pistol in the hallway of the apartment house in the presence of appellant and his four companions from New Orleans.

One of appellant's accomplices, Marvin Sartain, claimed that he heard the shot but that neither he nor any of his companions were involved in the shooting.

According to the testimony of Brown, the local narcotics user who helped appellant and his four associates "score" with the deceased, the five men came downstairs where the deceased was in the hallway. One of the accomplices stated that he was going to "take care of his business" with the deceased. Brown left to go to the laundromat next door for some water. He heard a shot, observed appellant and his companions depart the scene and discovered Leroy Malone shot to death just inside the apartment hallway.

The investigating officers obtained a description of the automobile and its occupants and issued a radio dispatch for the vehicle and its five occupants stating they were suspects to a murder that had just been committed in Mobile. The radio dispatch described the vehicle as a white 1963 Dodge automobile bearing a Louisiana license plate beginning with the numbers 1–7–9. This police alert was picked up by Captain J. W. Stallings, District Commander for the Alabama Department of Public Safety. He called other units to set up a road block on Interstate 10, west of Mobile. Captain Stallings observed the wanted vehicle above the road block and followed it to the road block, radioing ahead, " . . . that our Louisiana Dodge was on their way . . . ."

The automobile was stopped at the road block. The driver was taken from the vehicle. At that point the officers noticed appellant sitting in the left rear seat "with his hands behind his back shuffling." The appellant was removed from the automobile and an automatic pistol was found behind where he was seated in a crack behind the rear seat.

The officers arrested all five men and searched them and the automobile for other weapons and found two more pistols under the front seat of the car. A sawed off shotgun was found in the trunk of the car.

An autopsy was performed by a doctor who had been practicing for thirty years. He removed a spent bullet from the body of the deceased. He stated that the cause of death was a gunshot wound to the chest.

The slug removed from the body of the deceased, together with a spent cartridge found between the legs of the deceased and the automatic weapon were delivered to the office of the Department of Toxicology in Mobile. The automatic pistol was test-fired and a comparison was conducted. The examiner concluded that the spent cartridge and piece of lead were fired from the automatic pistol. This was the same automatic pistol the officers saw appellant trying to shove behind the left rear seat where he was sitting when they removed him from the Dodge automobile.

All five men caught in the fleeing Dodge automobile after the murder were indicted for murder in the first degree. This was proper under Title 14, Section 14, Code of Alabama 1940.

When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in

anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. *Stokely v. State,* 254 Ala. 534, 49 So.2d 284.

■ Such community of purpose may be formed in a flash. *Ray v. State,* 32 Ala.App. 556, 28 So.2d 116.

■ The possession by the accused of the murder weapon a short time after the killing tends to connect the accused with the murder. *Holland v. State,* 49 Ala.App. 104, 268 So.2d 883.

■ Where there is probable cause to believe that a vehicle, which is capable of being moved, contains evidence of a crime, law enforcement officers may search the vehicle without a warrant. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706.

This was a "hot pursuit" case and is controlled by *Daniels v. State,* 290 Ala. 316, 276 So.2d 441, and the United States Supreme Court cases cited therein.

Appellant did not testify but offered the testimony of two convicts to the effect that the deceased was a known dealer in narcotics.

In *Bass v. State,* Ala.App., 313 So.2d 208, this court said:

"This is one of the strongest circumstantial evidence cases to find its way to this court in a long time. Circumstantial evidence is entitled to the same weight that direct evidence is entitled to provided that it points one way, viz., to the guilt of the accused. Where, as here, the prosecution relies to a great extent on circumstantial evidence for a conviction, very wide latitude is allowed in making proof. *Willis v. State,* 37 Ala.App. 185, 66 So.2d 753; *Sumeral v. State,* 39 Ala.App. 638, 106 So.2d 270; *Cline v. State,* 25 Ala.App. 433, 148 So. 172; *Hollenquest v. State,* Ala.App., 53 Ala.App. 501, 301 So.2d 264.

We are required to consider the evidence in the most favorable light for the prosecution. *Womack v. State,* 34 Ala. App. 487, 41 So.2d 429.

In *Hill v. State,* 26 Ala.App. 347, 159 So. 503, we find this expression:

'Anything said or done at the time of the alleged offense by [the] parties present is relevant and admissible in evidence on trial therefor.'

The *corpus delicti* is a fact, proof of which may be shown by circumstantial evidence, and if there is a reasonable inference to prove its existence, the court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. *Hines v. State,* 260 Ala. 668, 72 So.2d 296; *Burleson v. State,* 52 Ala.App. 399, 293 So.2d 317.

Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this court has no right to disturb the verdict. *Price v. State,* 53 Ala.App. 465, 301 So. 2d 230; *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690; *Bolton v. State,* 21 Ala.App. 373, 108 So. 631."

■ We have carefully examined the record for errors which injuriously affected the substantial rights of appellant and have found none. Accordingly, the judgement of conviction is affirmed.

Affirmed.

All the Judges concur, except CATES, P. J., who concurs in the result.